**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| **BO LI**, *et. al*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 22-cv-2331 (TSC) |
| | ) | |
| **ANTONY BLINKEN**, *et. al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**<u>MEMORANDUM OPINION</u>**

Plaintiffs in this action are 308 Chinese nationals who have sued Antony Blinken and

Alejandro Mayorkas in their official capacities as Secretary of the United States Department of

State and Secretary of the United States Department of Homeland Security ("DHS"),

respectively.  Plaintiffs have applied for EB-5 visas that would grant them residency status in the

United States, and the State Department has not yet fully adjudicated their petitions and issued

them visas.  They now ask the court to order DHS to transfer their approved Forms I-526 to the

State Department and order the State Department to allocate them visa numbers and process their

visa applications.  Defendants have moved to dismiss, and the court will GRANT their motion.

## I.   BACKGROUND

### A.   EB-5 Visa Program

In 1990, Congress amended the Immigration and Nationality Act ("INA") to establish a

program—the "EB-5" visa—that sets aside visas for "employment creation" immigrants who

invest in new commercial enterprises that create full-time jobs for American workers.  *See*

Immigration Act of 1990, Pub. L. No. 101-649, § 121(a), 104 Stat. 4978, 4987 (Nov. 29, 1990)

(codified at 8 U.S.C. § 1153(b)(5)).

The path to lawful permanent residence through the EB-5 program involves several steps. First, an applicant files a Form I-526 immigrant petition with the United States Citizenship and Immigration Services ("USCIS"). *See* 8 C.F.R. § 204.6(a). The petition is given a "priority date," 22 C.F.R. § 42.53(a), which is the date the petition was filed with USCIS, 8 C.F.R. § 204.6(d). If USCIS approves the petition, it sends it to the State Department for visa pre-processing. *See* 8 U.S.C. § 1154(b).

Every month a certain number of visas are made available for numerically capped visa categories. *See* 22 C.F.R. §§ 42.51, 42.52. The State Department estimates the anticipated number of visas to be issued and relies on such estimates in authorizing visa issuances. *See* 8 U.S.C. § 1153(g). When the total number of beneficiaries with an approved petition in a particular category exceeds the supply of visa numbers available for that category for a given month, the category is oversubscribed, and the State Department publishes a monthly Visa Bulletin that identifies the "cut-off date," or "final action date." *Feng Wang v. Pompeo*, 354 F. Supp. 3d 13, 18 (D.D.C. 2018). Only eligible beneficiaries whose approved petitions have priority dates earlier than the final action date may be allotted a visa number. 8 U.S.C. §§ 1153(e)(1), (g) (setting forth the order of consideration for applicants for numerically capped immigrant visas); *id*. § 1255(a) (conditioning eligibility for adjustment of status on the availability of an immigrant visa number). A beneficiary whose priority date is earlier than the final action date is said to have a "current" priority date, 8 C.F.R. § 245.1(g)(1), and a visa will not be available until other applicants with earlier priority dates have received visas.

Once a visa number becomes available for a beneficiary of an approved I-526 petition, or immediately available for adjustment of status, the beneficiary may complete the second step of the EB-5 application process. For applicants outside of the United States, the State Department

adjudicates applications for visas, *see* 8 U.S.C. § 1152(a)(1)(B), and must determine that an applicant is "documentarily qualified" within the meaning of 22 C.F.R. § 40.1.  Next, the applicant must have an interview with a consular official who will further determine eligibility. See 22 C.F.R. §§ 42.62, 42.65.  Approved applications for adjustment of status (within the United States) and for immigrant visas (at consular posts overseas) draw from the same "pool" of visa numbers and thus count equally against the annual visa cap for a given visa category and country.  *See* 8 U.S.C. § 1255(b) (providing that, upon approval of an application for adjustment of status, "the Secretary of State shall reduce by one the number of the preference visas authorized to be issued under sections 1152 and 1153 of this title within the class to which the alien is chargeable for the fiscal year then current"); *Feng Wang*, 354 F. Supp. 3d at 18.

Upon adjustment of status or successful application for admission to the United States under an EB-5 immigrant visa, the foreign national investor and his or her derivatives receive lawful permanent resident status on a conditional basis.  *See* 8 U.S.C. § 1186b(a).

**B.      Plaintiffs and their EB-5 Applications**

Plaintiffs in this case are 308 Chinese nationals whose petitions for EB-5 visas have been approved by USCIS, and who claim they are all entitled to receive visa numbers.  They seek relief under 5 U.S.C. § 706(1)–(2) of the Administrative Procedure Act ("APA"), alleging that USCIS and the State Department have failed to comply with their statutory duties under the INA and should be ordered to comply immediately.

## II.     LEGAL STANDARD

**A.      12(b)(1) Motion**

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), the

plaintiff bears the burden of establishing that the court has subject matter jurisdiction over its claim. *Moms Against Mercury v. Food & Drug Admin.*, 483 F.3d 824, 828 (D.C. Cir. 2007). Federal courts are "forbidden . . . from acting beyond our authority," *NetworkIP, LLC v. FCC*, 548 F.3d 116, 120 (D.C. Cir. 2008), and therefore, "have an affirmative obligation to consider whether the constitutional and statutory authority exist for us to hear each dispute." *James Madison Ltd. ex rel. Hecht v. Ludwig*, 82 F.3d 1085, 1092 (D.C. Cir. 1996) (quoting *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 196 (D.C. Cir. 1992)) (internal quotation marks omitted).

**B.      12(b)(6) Motion**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief may be granted."  In evaluating a Rule 12(b)(6) motion, courts "treat the complaint's factual allegations as true" and "grant plaintiff the benefit of all inferences that can be derived from the facts alleged." *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (quotation marks and citation omitted).  But a court need not accept as true "a legal conclusion couched as a factual allegation," nor "inferences . . . unsupported by the facts set out in the complaint." *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 193 (D.C. Cir. 2006) (quotation omitted).  Further, the court may consider "any documents either attached to or incorporated in the complaint[,] and matters of which [courts] may take judicial notice." *Equal Emp. Opportunity Comm'n v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).

### III.      ANALYSIS

Plaintiffs bring four claims in this action: In Counts I and II they allege that DHS has either unlawfully or unreasonably delayed transfer of fifty-seven Plaintiffs' approved immigrant visa petitions to the State Department, Second Am. Compl. ¶¶ 387–88, 405–06, ECF No. 23; in

Counts III and IV they allege the State Department has either unlawfully withheld, or unreasonably delayed, allocation of visa numbers to all Plaintiffs, *id.* ¶¶ 434–38.

## A.     Claims Against DHS are Moot

Article III's Case-or-Controversy Clause limits federal courts' jurisdiction to "actual, ongoing controversies." *Foretich v. United States*, 351 F.3d 1198, 1210 (D.C. Cir. 2003) (quoting *Honig v. Doe*, 484 U.S. 305, 317 (1988)); U.S. Const. Art. III, §2, cl. 1.  Thus, a lawsuit is "moot—and is therefore no longer a 'Case' or 'Controversy'—'when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.'" *Almaqrami v. Pompeo*, 933 F.3d 774, 779 (D.C. Cir. 2019) (quoting *Chafin v. Chafin*, 568 U.S. 165, 172 (2013)).  In deciding whether it has subject matter jurisdiction, a court may consider "undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (quoting *Herbert*, 974 F.2d at 197).  "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."  Fed. R. Civ. P. 12(h)(3); *see Chafin*, 568 U.S. at 172.

Fifty-seven Plaintiffs seek to compel USCIS to transfer their approved petitions to the State Department, alleging that USCIS has unlawfully withheld and unreasonably delayed transferring these petitions.  *See* Second Am. Compl. ¶¶ 387–433, ECF No. 23.  Defendants contend that USCIS has already transferred these petitions to the State Department, and therefore this request for relief is moot.  Def. Mot. at 22–23, ECF No. 24.  In response, Plaintiffs argue that there is "no[] proof that [the State Department] has received the approved petitions."  Pls. Opp'n at 1, ECF No. 26.

Defendants submitted a declaration from USCIS Chief of the Immigrant Investor Program Office who stated that as of December 20, 2022, USCIS had transferred the approved petitions of the fifty-seven Plaintiffs to the State Department.  Emmel Decl. ¶ 3, ECF No. 24-1. This is sufficient to establish that Plaintiffs have obtained the relief they sought from DHS, *see* Second Am. Compl. ¶ 480, ECF No. 23 (asking the court to "[c]ompel DHS to transfer all Plaintiffs with approved Forms I-526" to the State Department).  Consequently, there is no relief for the court to grant Plaintiffs against DHS, and Counts I and II will be dismissed as moot.

**B.      Failed to State a Claim Against State Department**

Plaintiffs allege that the State Department has either unlawfully withheld or unreasonably delayed issuing their visa numbers, and asks the court to order the agency to act.  The APA provides that a court may "compel agency action unlawfully withheld or unreasonably delayed," 5 U.S.C. § 706(1), but such a claim can "proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take."  *Norton v. S. Utah Wilderness All.* ("*SUWA*"), 542 U.S. 55, 64 (2004).  In other words, a court's power to "compel agency action is carefully circumscribed to situations where an agency has ignored a specific legislative command."  *Zixiang Li v. Kerry*, 710 F.3d 995, 1003 (9th Cir. 2013) (citation omitted). Accordingly, Plaintiffs' claims can only proceed if the State Department is required to issue them visa numbers and has either unlawfully failed to so or unreasonably delayed doing so.

Plaintiffs contend that the State Department "has a required, discrete duty to authorize all available visa numbers upon receipt of the approved visa petitions."  Second Am. Compl. ¶ 435, ECF No. 23; *see id.* at ¶¶ 323, 349, 371, 373, 380, 438, 448–50, 452–53.  They further allege that even though their priority dates are not current, *id.* at ¶ 437, they are still entitled to an order compelling the State Department to "immediately" allocate visa numbers to them, *id.* at ¶ 438;

*see generally*, *id*. at ¶¶ 323, 380, 434–82.  But given that the State Department is not "legally *required*" to allocate visa numbers to a foreign national upon receipt of an approved petition, *SUWA*, 542 U.S. at 62 (emphasis in original), Counts III and IV fail as a matter of law.

 Plaintiffs argue that several statutory provisions require the State Department to issue them visa numbers.  *See* Pls. Opp'n at 3–4, ECF No. 26.  As relevant here, Congress requires that

- "Visas shall be made available, in a number not to exceed 7.1 percent of such worldwide level, to qualified immigrants seeking to enter the United States for the purpose of engaging in a new commercial enterprise" involving a certain investment level and creating at least 10 American jobs.  *Id.* § 1153(b)(5)(A).

- "[E]mployment-based immigrants in a fiscal year shall be allotted visas."  *Id*. § 1153(b).

- "The Secretary of State shall then authorize the consular officer concerned to grant the preference status."  *Id.* § 1154(b).

Plaintiffs misapprehend the requirements of these statutory provisions and the INA's broader scheme.  These provisions do not impose any time limit or specific process by which visa numbers must be allocated.  Indeed, they do not mention visa numbers at all.

The INA imposes multiple, competing obligations on the State Department and recognizes that "the procedures for the processing of immigrant visa applications" are generally committed to State's discretion.  8 U.S.C. § 1152(a)(1)(B).  The statute requires the State Department to not only make visas available, but also to make them available in certain quantities, *id*. §§ 1152(a)(2), 1153(b)(5)(A), and in the order in which their respective petitions were filed, *id.* § 1153(e)(1).  This broader statutory context confirms that Congress intended State to have flexibility in managing the INA's various and competing commands at the stages of visa allocation and issuance.  *See Bega v. Jaddou*, No. CV 22-02171 (BAH), 2022 WL

17403123, at *2 (D.D.C. Dec. 2, 2022) (recognizing that "a successful adjudication of an I-526 petition represents only a foreign investor's . . . eligibility to apply for two-year conditional permanent resident status").

As the D.C. Circuit explained in the context of an I-140 petition—an analogous employment-based visa application—"[o]nce USCIS grants the . . . petition, an immigrant worker is eligible to stand in line for an immigrant visa number to be issued by the Department of State."  *iTech U.S., Inc. v. Renaud*, 5 F.4th 59, 61 (D.C. Cir. 2021) (citing *United States v. Ryan-Webster*, 353 F.3d 353, 356 (4th Cir. 2003)).  Thus, the INA "establishes no clear duty" for the State Department to allocate numbers "within a certain time frame or in a certain manner," *Oglala Sioux Tribe of Pine Ridge Indian Reservation v. U.S. Army Corps. of Eng'rs*, 570 F.3d 327, 334 (D.C. Cir. 2009), and Counts III and IV will accordingly be dismissed for failure to state a claim.

## IV.   CONCLUSION

For the reasons explained above, the Government's motion to dismiss, ECF No. 24, will be GRANTED.

Date: September 30, 2023


*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge